**Black v Ganieva**

2024 NY Slip Op 33295(U)

September 20, 2024

Supreme Court, New York County

Docket Number: Index No. 158062/2023

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. DAVID B. COHEN**             **PART**           **58**

*Justice*

-------------------------------------------------------------------------------X

LEON D. BLACK,

              Plaintiff,

    - v -

GUZEL GANIEVA, WIGDOR LLP,

           Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158062/2023 |
| **MOTION DATE** | 02/08/2024 |
| **MOTION SEQ. NO.** | 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 64, 67

were read on this motion to/for                 DISMISSAL             .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 65, 68

were read on this motion to/for                 DISMISSAL             .

In this action involving a non-disclosure agreement related to plaintiff and defendant Ganieva's relationship, defendant Wigdor LLP moves pursuant to CPLR 3211(a)(7) and (g) and Civil Rights Law § 76-a for an order dismissing plaintiff's second amended complaint against it and granting it attorney fees pursuant to Civil Rights Law § 70-a (seq. 004). Plaintiff opposes.

By notice of motion, Ganieva moves pursuant to CPLR 3211(a)(1), (7) and (g) and Civil Rights Law § 76-a for an order dismissing plaintiff's second amended complaint against her and granting her attorney fees pursuant to Civil Rights Law § 70-a (seq. 005). Plaintiff opposes.

The motions are consolidated for disposition.

**158062/2023 BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**       **Page 1 of 11**
**Motion No. 004 005**

1 of 11

# I. BACKGROUND

## A. Prior action (*Ganieva v Black*, index no. 155262/21)

The salient facts concerning the prior action involving the parties are set forth in the decision and order dismissing it (NYSCEF 292, under index no. 155262/21). In sum, plaintiff and Ganieva had a years-long intimate relationship, which ended with Ganieva's signing of a non-disclosure agreement (NDA) in exchange for the sum of at least $9.5 million.

In 2021, after years of silence, Ganieva spoke publicly about her relationship with plaintiff, thereby violating the NDA and causing plaintiff to cease making payments to her thereunder. In response, Ganieva sued plaintiff, with Wigdor as her legal counsel and the law firm that filed the lawsuit.

Plaintiff then filed a pre-answer motion to dismiss, which was granted on May 24, 2023 on the grounds that:

> As [Ganieva] does not dispute having signed the NDA or receiving benefits arising therefrom, and she does not contend that there was an absence of consideration given for it, the sole remaining issue is whether the NDA is unenforceable or voidable due to duress.
>
> A valid release bars an action based on a claim which is the subject of the release, and where the release language is clear and unambiguous, it is binding on the parties unless it was procured by, among others, duress (*Allen v Riese Org*., 106 AD3d 514 [1st Dept 2013]).
>
> However, when a party ratifies a release, she is barred from challenging it based on alleged duress in signing it. "Ratification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it . . . Thus, a plaintiff cannot claim that he or she was compelled to execute an agreement under duress while simultaneously accepting the benefits of the agreement." (*Id.* at 517).
>
> . . .
>
> Here, it is undisputed that [Ganieva] received benefits pursuant to the NDA of approximately $9.5 million over almost six years, and she did not repudiate or contest it during that time period, thereby ratifying it and barring her from alleging duress (*see Weil, Gotshal & Manges LLP v Fashion Boutique of Short Hills*, 56 AD3d 334 [1st Dept

**158062/2023 BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No. 004 005**

**Page 2 of 11**

2 of 11

2008] [as defendants accepted and made use of substantial benefits accruing to them under settlement agreement, they implicitly ratified it and were barred from claiming duress]; *Napolitano v City of NY*, 12 AD3d 194, 195 [1st Dept 2004] [as plaintiff settled disciplinary charges pending against him by signing general release and taking in exchange vested interest retirement, he ratified release and could not allege duress in its execution; almost two-year delay between alleged duress, consisting of threat of demotion if plaintiff contested disciplinary charges, and filing of action, "further undermin(ed) the claim of duress"]).

While a person under continuing duress has no obligation to repudiate until the duress has ended (*Kim v An*, 150 AD3d 590 [1st Dept 2017]), [Ganieva]'s second amended complaint contains no allegations related to a continuing duress, nor any allegations showing that the parties had any contact after the NDA was signed in 2015. Thus, [Ganieva] does not state a claim of continued duress (*cf. Kim*, 150 AD3d at 593-594 [defendant alleged occurrence of events up to two months before she filed action that constituted continued and continuing pattern of harassment, which could be found to be part of same duress at issue]).

To the extent that [Ganieva] argues that duress may be found even if there were no threats if the party had little time to investigate or consider a release, here, according to [her] own allegations, she discussed and/or negotiated a payment amount at several meetings with [plaintiff] before she signed the NDA, she set up the last meeting with [him] after telling him she would accept his monetary proposal, and she had time to discuss the situation with her friends before she signed the NDA. While English may not have been [Ganieva]'s first language, she offers nothing to demonstrate that she was unable to read the NDA, and it is undisputed that by the time she signed it, [Ganieva] had graduated from Columbia University with a math degree, had applied to attend business school, and had interviewed for jobs at high-level international financial firms. [Ganieva] thus fails to sufficiently allege that she had no time to deliberate or research her options before signing the NDA and/or that she did not understand it.

Nor does she cite any authority for the proposition that she could not contest the NDA without having a copy of it in her possession. Indeed, [Ganieva] filed the instant lawsuit without having a copy of the NDA.

Finally, the NDA clearly and unambiguously covers all claims arising out of the parties' relationship, past or future, and thus there is no merit to [Ganieva]'s argument in that regard.

In light of this result, there is no need to address the parties' remaining contentions related to the pleading sufficiency of [Ganieva]'s causes of action . . .

158062/2023  BLACK, LEON D. vs. GANIEVA, GUZEL ET AL
Motion No.  004 005

Page 3 of 11

[* 3]

B.        Instant action

In August 2023, plaintiff commenced this lawsuit against defendants, alleging that Wigdor had a pattern of threatening wealthy and/or famous defendants with scandalous allegations in order to convince them to settle cases for large sums, and that it pursued frivolous claims despite knowing about their lack of merit, in order to obtain monetary settlements. Plaintiff asserts a single claim against defendants for malicious prosecution, as follows, in pertinent part:

> Defendants initiated this action without probable cause and despite knowing that the claims were barred by the [NDA]. Further, Defendants pursued the meritless claims even after being confronted with facts that exonerated Black. Such conduct demonstrates that Defendants acted maliciously and intentionally for the improper purpose of harassing and injuring Black. Wigdor's malice at the time it filed the Ganieva complaints is further confirmed by its subsequent actions, including filing the [two other] fictitious lawsuits after Black refused to capitulate to Wigdor's outrageous settlement demands. Wigdor's malice at the time it filed the Ganieva complaints is also evidenced by its false and malicious statements to Air Mail, published on August 5, 2023, that Black is "violent," belongs "behind bars," and "there's a lot to fear with Leon Black."

(NYSCEF 5).

In November 2023, plaintiff filed a second amended complaint, in which he added additional allegations against defendants and more details about his alleged damages (NYSCEF 34).  Specifically, he cites the following as examples of harm he suffered by defendants' actions:

(1)      he was forced to resign from his positions as CEO and Chairman of Apollo Global Management;

(2)      he lost business and investments, including a $2 billion investment that had been proposed for plaintiff's new fund, and as a result of losing that investment, he lost an additional $3 billion in probable investments, thereby losing management fees of over $1 million;

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

**Page 4 of 11**

4 of 11

(3)     he had to obtain higher-cost financing for his funds as the lower-cost lenders declined to finance his funds, causing him to incur at least $1.5 million in additional interest payments;

(4)     he lost the opportunity to buy a company with over $60 million in annual earnings, causing him to lose at least $287 million in lost business; and

(5)     he was effectively "cancelled" in that speaking opportunities and invitations related to his business and philanthropy were withdrawn, social opportunities vanished, some pension funds refused to invest in his funds, and he and his family were denied loans. (NYSCEF 34).

## II.     CONTENTIONS

### A.     Wigdor's motion (NYSCEF 43, 67)

Wigdor contends, initially, that plaintiff's complaint must be dismissed under New York's Anti-SLAPP Statute, and if not dismissed, that plaintiff fails to state a claim for malicious prosecution.  It argues that plaintiff does not allege the "entire absence" of probable cause or malice, and denies that plaintiff's alleged injuries are sufficiently particularized, applicable, or connected to Wigdor's alleged misconduct.

### B.     Ganieva's motion (NYSCEF 54, 68)

Ganieva contends that plaintiff has not sufficiently alleged a special injury and that the alleged injuries suffered by plaintiff occurred for reasons unrelated to Ganieva or the prior action.  She joins in the arguments made by Wigdor regarding the rest of the malicious prosecution claim.

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

**Page 5 of 11**

5 of 11

[* 6]

C.      Plaintiff's opposition (NYSCEF 64, 65)

Plaintiff asserts that the anti-SLAPP law does not apply to his malicious prosecution claim, and that he has sufficiently established all of the elements of his claim.

III.      ANALYSIS

A.   Anti-SLAPP

Civil Rights § 76-a is known as the anti-SLAPP statute, which stands for "Strategic Lawsuit Against Public Petition and Participation," and it is "specifically aimed at broadening the protection of citizens facing litigation arising from their public petition and participation," particularly in defamation cases (*600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130, 137 n 1 [1992], *rearg denied* 81 NY2d 759 [1992], *cert denied* 508 US 910 [1993]).

> An "action involving public petition and participation" is a claim based upon:
>
> 1.      any communication in a place open to the public or a public forum in connection with an issue of public interest; or
>
> 2.      any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

(Civil Rights Law § 76-a[1][a]).  The anti-SLAPP law is strictly construed (*315 W. 103 Enters. LLC v Robbins*, 171 AD3d 466, 467 [1st Dept 2019], *lv dismissed* 34 NY3d 1151 [2020]).

It also creates an "accelerated summary dismissal procedure, which applies when a defendant in a SLAPP suit moves pursuant to CPLR 3211(a)(7) to dismiss the complaint."  On such a motion, the defendant has the initial burden to show that the action or claim is a SLAPP suit, as defined by CPLR 3211(g)(1).  If that burden is met, the burden shifts to the plaintiff to establish that the claim has a "substantial basis in law," which is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (*Reeves v*

158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL
Motion No.  004 005

Page 6 of 11

*Assoc. Newspapers, Ltd.*, ___ AD3d ___, 2024 WL 3892069 [1st Dept 2024]; *see also*

*Smartmatic USA Corp. v Fox Corp.*, 213 AD3d 512 [1st Dept 2023]).

Pursuant to Civil Rights Law § 70-a, a defendant in an action involving public petition

and participation may recover damages, including costs and attorney's fees, from any person

who commenced or continued such action, provided that: "(a) [the defendant demonstrates] that

the action involving public petition and participation was commenced or continued without a

substantial basis in fact and law and could not be supported by a substantial argument for the

extension, modification or reversal of existing law."

Damages are recoverable in a SLAPP suit only if: "in addition to all other necessary

elements, [the plaintiff] shall have established by clear and convincing evidence that any

communication which gives rise to the action was made with knowledge of its falsity or with

reckless disregard of whether it was false, where the truth or falsity of such communication is

material to the cause of action at issue." (Civil Rights Law § 76-a[2]).

Here, the initial burden of establishing that an action is a SLAPP suit is borne by

defendants, and as observed by plaintiff, defendants cite no caselaw establishing that a malicious

prosecution claim constitutes a SLAPP claim, and research discloses none.

In any event, even if defendants met their burden, plaintiff successfully meets his burden

by demonstrating that his claim has a substantial basis in law and fact, as discussed below.

Thus, there is no basis to dismiss the claim based on the Anti-SLAPP law.

### B.    Malicious prosecution claim

On a motion pursuant to CPLR 3211(a)(1), "a dismissal is warranted only if the

documentary evidence submitted conclusively establishes a defense to the asserted claims as a

matter of law" (*Leon v Martinez*, 84 NY2d 83, 88 [1994]).  Dismissal of a complaint pursuant to

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

**Page 7 of 11**

7 of 11

[* 7]

CPLR 3211(a)(7) requires that the pleading "be afforded a liberal construction" (*see id.*; CPLR 3026), and "[The court must] accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon*, 84 NY2d at 87-88 [1994]; *see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144 [2002]).

A civil claim for malicious prosecution requires a showing that: (1) a prior judicial proceeding was brought by the defendant against the plaintiff; (2) its termination favored the plaintiff; (3) it lacked probable cause; and (4) the defendant acted with malice (14 NY Prac, New York Law of Torts § 1:78 [2023]).

A prior civil action that may support a malicious prosecution claim must involve the interference with the plaintiff's person or property rights, i.e., a "special injury." (*Engel v CBS, Inc.*, 93 NY2d 195 [1999]). In determining what constitutes a sufficient special injury, the *Engel* Court held:

> [B]urdens [that are] substantially equivalent to those imposed by provisional remedies are enough . . . a highly substantial and identifiable interference with person, property, or business will suffice . . . Put another way, what is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. This standard strikes the balance required between discouraging excess litigation on the one hand and prohibiting the malicious use of courts on the other.

(93 NY2d at 205). Moreover, "specific, verifiable loss of business" may constitute special injury.

As to the lack of probable cause element, the absence of probable cause must be patent and it is insufficient if some of the prior claims had potential merit (14 NY Prac, New York Law of Torts § 1:81 [2023]; *see Perryman v Vill. of Saranac Lake*, 41 AD3d 1080 [3d Dept 2007] [plaintiff must show *entire* lack of probable cause in prior proceeding] [emphasis in original]).

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

**Page 8 of 11**

8 of 11

"Probable cause" is defined as "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty" (*id.* at 1081, quoting *Colon v City of New York*, 60 NY2d 78, 82 [1983]).

The "malice" element requires a showing that the defendant commenced the prior action "for a wrong or improper motive, for something other than the desire to see the ends of justice served"; she need not prove that the defendant was motivated by ill will, spite or hatred.  Malice may be inferred based on the facts and circumstances of the case, including the lack of probable cause (14 NY Prac, New York Law of Torts § 1:82 [2023).

Here, the first two elements of malicious prosecution are not in issue as it is undisputed that defendants commenced a prior action against him and that it terminated in his favor by being dismissed.  Thus, the only elements remaining are the lack of probable cause, malice, and special injury.

In *Thomas v G2 FMV, LLC*, the Appellate Division, First Department, held that the plaintiff stated a claim for malicious prosecution based on the defendants' commencement of a prior action seeking a declaration that he resigned from the defendants' investment group without "Good Reason" under the group's operating agreement.  Specifically, the plaintiff alleged that there was no probable cause as "no person of ordinary care and prudence would believe" that the plaintiff was not entitled to resign under the agreement, and that the defendants acted with malice as they brought the prior action to silence the plaintiff as a whistle-blower, and caused damage to his reputation and denied him fair market value for his shares in the group. Moreover, the "special injury" element was satisfied by the allegation that the plaintiff's consulting arrangement with a non-party was terminated as a result of the allegations made against him in the prior action (147 AD3d 700, 700 [1st Dept 2017]).

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

**Page 9 of 11**

In this case, as to the lack of probable cause, plaintiff's allegations sufficiently demonstrate that the prior action was dismissed in its entirety on the merits, based on undisputed facts and unequivocal caselaw which established that the NDA was valid and enforceable and that even if signed under duress, Ganieva ratified it, which prohibited Ganieva from asserting any claims related to the parties' relationship. The fact that the prior action was dismissed pre-answer and without the need for any discovery further emphasizes the action's meritless nature and, thereby, the absence of probable cause to have commenced and continued it.

Plaintiff also pleads that defendants acted with malice by alleging that they commenced the lawsuit in an attempt to coerce him into paying an exorbitant settlement amount to avoid the threat of Ganieva's allegations being publicized and potentially causing him to lose his business and reputation, among others, and that they commenced the case and continued to prosecute it even after he provided Wigdor with evidence proving conclusively that the action had no merit. Moreover, plaintiff contends that Wigdor commenced two additional salacious and meritless lawsuits against him when he refused to settle the prior action (*see Sapienza v Notaro*, 172 AD3d 1418 [2d Dept 2019] [complaint sufficiently alleged malice as plaintiff contended that defendants continued action with improper purpose of extorting settlement from him and based on claims barred by res judicata]). He thus sufficiently alleges the malice element of the claim (*see Thomas*, 147 AD3d at 700 [plaintiff stated malice element by alleging that defendants brought prior action to silence him as whistleblower, to damage his reputation, and to deny him fair market value for his shares]).

Finally, plaintiff's detailed allegations regarding his alleged damages – loss of his position with Apollo, lost business and investment opportunities, and lost goodwill and good reputation – establish the element of a "special injury." (*Sapienza*, 172 AD3d at 1420 [special

158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL
Motion No.  004 005

Page 10 of 11

10 of 11

injury pleaded with particularity based on allegations that plaintiff had employment agreement with non-party and non-party declined to renew it based on prior action]; *Thomas*, 147 AD3d at 700 [special injury alleged with particularity based on fact that plaintiff's new business arrangement was terminated as a result of allegations in prior action]).

For all of these reasons, defendants' motions to dismiss plaintiff's malicious prosecution claim are denied.

## IV.     CONCLUSION

Accordingly, it is hereby

ORDERED, that defendants' motions (seq. 004 and 005) are denied; it is further

ORDERED, that defendants file their answers within 30 days of the date of this order; and it is further

ORDERED, that the parties appear for a preliminary conference on November 19, 2024 at 9:30 a.m.

| **9/20/2024** | | | |
| --- | --- | --- | --- |
| **DATE** | | **DAVID B. COHEN, J.S.C.** | |

| **CHECK ONE:** | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | **X** DENIED | | GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**158062/2023   BLACK, LEON D. vs. GANIEVA, GUZEL ET AL**
**Motion No.  004 005**

Page 11 of 11